# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. WOJTASZEK, | ) | CASE NO. 1:19-cv-02783 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Michael A. Wojtaszek (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On December 23, 2015, Plaintiff filed his applications for DIB and SSI, alleging a disability onset date of December 16, 2015. (R. 9, Transcript (Tr.) 323-331). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative

Law Judge (ALJ). (Tr. 208-284). Plaintiff participated in the hearing on April 5, 2018, was represented by counsel, and testified. (Tr. 122-173). A vocational expert (VE) also participated and testified. *Id*. On October 31, 2018, the ALJ found Plaintiff not disabled. (Tr. 25). On September 27, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). Plaintiff's complaint challenges the Commissioner's final decision, and the parties have completed briefing in this case. (R. 1, 14, 15, 16).

Plaintiff presents three assignments of error, asserting the ALJ failed to: (1) follow the requirements of the treating physician rule when evaluating the medical opinion of Anna Serels, M.D.; (2) provide an adequate rationale for the weight assigned to the functional capacity evaluation performed by a physical therapist; and (3) provide an adequate rationale for the weight assigned to the opinions of State Agency psychological consultant Karla Delcour, Ph.D. (R. 12, PageID# 1156).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

Prior to his alleged onset date, Plaintiff saw nurse Maria Foglio, R.N., on December 9, 2014, and reported shooting neck pain that started four years earlier after a work-related accident. (Tr. 736). On physical examination, Plaintiff had a normal gait, intact sensation, full motor strength, and full range of motion (ROM) without pain. (Tr. 738).

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

On February 5, 2016, Plaintiff attended a mental health assessment with professional clinical counselors. (Tr. 494-504). Plaintiff reported he still consumed alcohol, but had been abstinent from cocaine for five months. (Tr. 494). He also reported extreme mood swings since childhood, had been tasered during an arrest, and had a history of assault and domestic violence. *Id*. He stated he had no friends (Tr. 495) and claimed to have an inability to read or write. (Tr. 496). On mental status examination (MSE), Plaintiff had persecutory, guarded, and aggressive thought content; visual hallucinations; a racing thought process; an angry, depressed, and anxious mood; labile affect; aggressive, agitated, anhedonic, impulsive, and restless behavior; and impaired attention/concentration. (Tr. 501-502). He admitted to past attempts at self-harm, including overdosing on medications and purposefully wrecking his car. (Tr. 502). Plaintiff was diagnosed with bipolar disorder, current episode depressed, severe, with psychotic features; attention deficit/hyperactivity disorder (ADHD); antisocial personality disorder; and cocaine/stimulant use disorder. (Tr. 503).

Plaintiff saw Premal Patwa, M.D., on February 23, 2016. (Tr. 505-507). On MSE, Plaintiff was "fidgety and restless" and "irritable and somewhat oppositional." (Tr. 506). His mood was "down and anxious and affect seems to be congruent with mood," his thought process was linear. He reported suspiciousness, command hallucinations, and suicidal ideation. (Tr. 506). His insight and judgment were poor. *Id*. Dr. Patwa believed it was "a good idea to hospitalize the patient and start medication treatment there. We discussed about going for Seroquel XR and small dose of Effexor XR combination. Patient was agreeable. We will give pink slip to send patient to the hospital." (Tr. 506).

On March 18, 2016, Dr. Patwa's MSE of Plaintiff was as follows:

Patient is alert and awake. Eye contact is good. Mood described as better. No

3

> anger or irritability noticed. Thought process is linear and goal directed. Affect
> seems to be mildly anxious with normal range and intensity. No delusional
> thoughts elicited. Denies thoughts of harming self or harming anybody else.
> Denies perceptual disturbance. Insight and judgment seems to be good.

(Tr. 608).

On July 6, 2016, Plaintiff reported to Dr. Patwa that he was doing better emotionally and reported only one instance of a hallucination. (Tr. 704). Dr. Patwa's MSE yielded unremarkable results, although the doctor increased Plaintiff's dose of Effexor. (Tr. 705).

Plaintiff was taken to the Hospital Emergency Room by ambulance on July 29, 2016, after reporting plans to jump off a bridge or shoot himself. (Tr. 723). He reported drinking alcohol that day, being homeless and going through a divorce. *Id.*

On November 22, 2016, Plaintiff's MSE was again unremarkable, and Dr. Patwa adjusted Plaintiff's Effexor dosage. (Tr. 875). Plaintiff's MSE was also largely unremarkable on December 20, 2016, except that Plaintiff's mood was "mildly down" and he seemed to be anxious. (Tr. 872).

Plaintiff had his first appointment with Anna Serels, M.D. on December 15, 2016. (Tr. 832). On physical examination, Plaintiff was in no acute distress, his breathing was non-labored, he had "[d]iffuse varicosities in the right lower leg, exquisitely tender to light touch over the varicose veins themselves." (Tr. 835). His gait was normal, and his lower extremity strength was 5 of 5. *Id.* Plaintiff requested a cane and a prescription was provided. (Tr. 836). Plaintiff was prescribed Gabapentin and Flexeril, and a lower back x-ray was ordered. *Id.*

On December 29, 2016, Plaintiff saw Dr. Serels for follow up on his right leg pain and x-ray results. (Tr. 826). A lower-back x-ray revealed mild degenerative changes. *Id.* Plaintiff reported that Gabapentin helped "somewhat," but Flexeril made no difference in his pain, which

he rated as 9 out of 10 at the time of the visit. *Id*. Plaintiff reported that Percocet helped in the past, but "he did not want to keep taking this medication." (Tr. 827). Plaintiff was "independent in all ADLs [activities of daily living], mobility, and driving" and did "not use any assistive device." *Id*. On physical exam, he was in no acute distress, but had "[d]iffuse varicosities in the right lower leg, exquisitely tender to light touch over the varicose veins themselves," but no rash, cyanosis, or edema. (Tr. 828). Plaintiff had a normal gait, 5/5 strength in the lower extremities, and some numbness on the right. (Tr. 829).

Plaintiff saw Dr. Patwa on January 17, 2017, and the reported MSE was largely unchanged. (Tr. 870). His medications were continued unchanged. (Tr. 871). On February 14, 2017, Plaintiff told Dr. Patwa he was "doing fine," and his MSE was unremarkable. (Tr. 868).

Dr. Serels noted on March 9, 2017, that Plaintiff reported his medications were no longer helping his right calf pain. (Tr. 884, 889). Treatment notes stated as follows:

> He was last seen here on 1/26/2017, [at] which point he stated that gabapentin was working well. However, about 3 weeks ago it started wearing off and does not work as well anymore. He rates his pain today as 8/10, and is quite frustrated about this. He does not have any significant side effects from the gabapentin. He continues to use his cane for long distance walking.

(Tr. 884). Physical exam again revealed diffuse varicosities in the right lower leg, exquisitely tender to light touch over the varicose veins themselves and numbness the right medial ankle and distal half of the medial right lower leg. (Tr. 887). Physical exam also revealed that the "right leg overall compared to the left leg is slightly more swollen, erythematous, and very tender to palpation." *Id*. Dr. Serels's impression was that Plaintiff's physical exam findings were "consistent with a peripheral neuropathy including a possible saphenous nerve injury during one of the varicose vein procedures. Complex regional pain syndrome type 1 cannot be ruled out." (Tr 888). Dr. Serels advised Plaintiff to continue using his cane as needed, and increased the

dosage of Gabapentin. (Tr. 888-889).

On June 15, 2017, Dr. Patwa's MSE of Plaintiff was unremarkable; Plaintiff reported he was doing fine overall. (Tr. 961).

Plaintiff again saw Dr. Serels on June 22, 2017. (Tr. 970-977). Dr. Serels noted that an MRI revealed extensive varicosities in the right leg. (Tr. 970, 974). Plaintiff rated his right calf pain as 8 of 10. *Id*. On physical examination, Plaintiff had "[d]iffuse varicosities in the right lower leg, exquisitely tender to light touch over the varicose veins themselves," numbness in the right lower leg, and swelling in the right leg which was tender to palpation. (Tr. 973). Plaintiff had a normal, non-antalgic gait. *Id*. Dr. Serels advised Plaintiff to continue using his cane as needed, she increased the prescribed dosage of Gabapentin, and advised Plaintiff to proceed with ketamine infusions and/or a spinal cord stimulator trial. (Tr. 976).

On August 18, 2017, Plaintiff complained to nurse Jennifer Stauffer that he was not going back to see Dr. Serels because he was not obtaining any results with her. (Tr. 1041). He reported having an appointment scheduled later that month to discuss possible leg amputation. *Id*.

On September 11, 2017, Dr. Beck administered a ketamine infusion. (Tr 1010-1011). Plaintiff reported to Dr. Beck on October 9, 2017, that the ketamine infusion was "very helpful for his pain" with relief lasting for one week. (Tr. 1003). At the appointment, he rated his pain as 10 of 10. *Id*. Plaintiff's gait was grossly normal. (Tr. 1005). There were "[h]yperpigmented scar regions noted of the right lower extremity; pain with deep palpation of the right posterior calf region as well as allodynia."[2] *Id*.

On October 24, 2017, Dr. Patwa's MSE of Plaintiff was largely unremarkable, except that

---

[2] According to *Dorland's Illustrated Medical Dictionary*, 30th ed., allodynia is "pain resulting from a non-noxious stimulus to normal skin."

Plaintiff's mood and affect were mildly down. (Tr. 1036). Dr. Patwa's MSE on February 13, 2018, again yielded largely normal results, save for Plaintiff's mood was "anxious at time[s]" and affect were "mildly down." (Tr. 1070). Dr. Patwa discontinued Trazodone and began Plaintiff on Remeron. (Tr. 1071).

### 2.  Medical and Other Opinions Concerning Plaintiff's Functional Limitations

On March 5, 2016, Plaintiff told Freeland Ackley, M.D., that he was disabled due to bipolar disorder. (Tr. 510). Plaintiff had no balance problems, a normal gait without any assistive device, a negative straight leg test, normal reflexes, and no swelling, effusion, or tenderness. (Tr. 513). Dr. Ackley opined that, based on the exam findings, Plaintiff was capable of walking for 60 minutes, sitting for more than an hour at a time, standing for 60 minutes, and lifting over 50 pounds. (Tr. 514). Dr. Ackley observed that "patient does not have any substantial physical limitations. His medical conditions of bipolar disorder seemed well controlled today." *Id*.

State Agency physician James Cacchillo, D.O., completed a Residual Functional Capacity (RFC) assessment on April 11, 2016. (Tr. 185-186). Dr. Cacchillo opined Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk and sit for six hours each in an 8-hour workday; and had no postural, manipulative, visual, environmental, or communicative limitations. *Id*. Dr. Cacchillo explained that "[a]t [Plaintiff's] most recent exam he had FROM [full range of motion] in all extremities, normal strength, normal sensation, and normal gait. He has had varicose vein problems, but peripheral pulses are good, mild pitting edema in right lower extremity. His gait was normal. His musculoskeletal exam most recently was normal." *Id*.

On June 16, 2016, State Agency reviewing psychologist Juliette Savitscus, Ph.D., completed a mental RFC assessment. (Tr. 186-188). In the area of concentration and persistence, Dr. Savitscus deemed Plaintiff moderately limited in his ability to carry out detailed instructions,

to work in coordination with or in proximity to others without being distracted by them, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 186-187). Dr. Savitscus explained that Plaintiff "can work at a steady pace to sustain simple tasks (1-3 steps). Psychological [symptoms] may occasionally limit productivity in the workplace. Therefore, workplace should not have high pace or production requirements." (Tr. 187). In the area of social functioning, the doctor deemed Plaintiff moderately limited in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. Dr. Savitscus explained that "[o]ccasionally, mood instability will interfere with interpersonal interactions. Claimant can interact briefly and occasionally in situations that do not require more than superficial contact with coworkers, supervisors, and the general public. No resolving conflicts or persuading others to follow demands." *Id*. In the area of adaptation, Plaintiff was deemed moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 188). Dr. Savitscus explained that "[s]tress tolerance impaired by MDI [medically determinable impairments]. Claimant can carry out tasks in setting where duties are relatively static and changes can be explained." *Id*.

On November 5, 2016, State Agency physician William Bolz, M.D., completed an RFC assessment. (Tr. 225-227). Dr. Bolz opined Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk and sit for six hours each in an 8-hour workday; and had no manipulative, visual, or communicative limitations. *Id*. Plaintiff was prohibited from climbing ladders, ropes, scaffolds and had to avoid all exposure to hazards. (Tr. 226-227). Dr. Bolz explained that "[a]t [Plaintiff's] most recent exam he had FROM in all extremities, normal

strength, normal sensation, and normal gait. He has had varicose vein problems, but peripheral pulses are good, mild pitting edema in right lower extremity. His gait was normal. His musculoskeletal exam most recently was normal." (Tr. 226).

On November 7, 2016, State Agency reviewing psychologist Karla Delcour, Ph.D., completed a mental RFC assessment. (Tr. 227-229). In the area of concentration and persistence, Plaintiff was deemed moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 228). Dr. Delcour explained that Plaintiff "can work at a steady pace to sustain simple tasks (1-3 steps). Psychological [symptoms] may occasionally limit productivity in the workplace. Therefore, workplace should not have high pace or production requirements." *Id*.

In the area of social functioning, Dr. Delcour deemed Plaintiff markedly limited in his ability to interact appropriately with the general public. He was deemed moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. Dr. Delcour explained that Plaintiff has a history of domestic violence and other assaultive behavior, has no friends, and cannot interact with the general public due to his aggressive behavior. *Id*. However, Plaintiff "can interact with co-workers and supervisors on an infrequent, superficial basis, but supervisors must offer constructive criticism only. No resolving conflicts or persuading others to follow demands." *Id*.

9

In the area of adaptation, Dr. Delcour deemed Plaintiff moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 229). Dr. Delcour explained that "[s]tress tolerance impaired by MDI [medically determinable impairments]. Claimant can carry out tasks in setting where duties are relatively static and changes can be explained." *Id*.

Physical Therapist Jennifer Diehl performed a Functional Capacity Evaluation of Plaintiff on June 13, 2017. (Tr. 950). Plaintiff alleged that he could not stand for any amount of time because it was "too hard on [his] legs." *Id*. He reported four surgeries to address his varicose veins, the last occurring in December of 2015. *Id*. He further reported that a doctor told him that his leg may need to be amputated if he cannot get the varicose vein issues under control. *Id*. Ms. Diehl found Plaintiff demonstrated the ability to work in the sedentary to light category. (Tr. 951). He was tested on a treadmill and was ranked as having "good" cardiovascular fitness. *Id*. Plaintiff had good consistency of effort on grip and pinch strength tests and on isometric strength testing. *Id*. Ms. Diehl observed that "[t]here was no elevation of psychometric responses, and the pain report appeared appropriate to the degree of muscle guarding and postural deviation demonstrated[,] [e]xcept he did rate his post pain as a 10/10 on the numeric scale which did not match his movements." *Id*. Plaintiff reported that the most he could stand without a break was sixty minutes at a time and that he could walk 1-2 hours with a cane, but later indicated he could only stand for thirty minutes total and walk for sixty minutes total in an 8-hour workday. (Tr. 952). Ms. Diehl noted Plaintiff stood/walked for 10-15 minutes during testing before needing to sit and rest. *Id*. On musculoskeletal evaluation, Ms. Diehl noted Plaintiff used a cane on the left side on arrival, but did not use the cane during the test; he would shift his weight to his left side when standing. (Tr. 953-954). Plaintiff's range of motion was within normal limits in both the upper and lower extremities. (Tr. 953). Strength testing yielded scores of 4s and 5s on a 5-point

scale in all categories. (Tr. 953-954). Ms. Diehl found that in an 8-hour workday Plaintiff could sit frequently (up to 2/3 of the workday), and could stand occasionally (up to 1/3 of the workday) in short bursts. (Tr. 954).

On June 22, 2017, Dr. Serels completed a Basic Medical form indicating that Plaintiff's health status was poor but stable. (Tr. 994). Dr. Serels checked boxes indicating that Plaintiff could stand/walk and sit for less than one hour each per workday; could lift/carry no more than 6-10 pounds occasionally and frequently; was extremely limited in making repetitive foot movements; and moderately limited in his ability to bend and reach. (Tr. 995). She wrote that Plaintiff had "severe right lower extremity pain likely due to nerve injury in the posterior lower leg after several vascular surgeries there to treat painful varicosities. Neuropathic pain can be severely disabling and at present time, he cannot tolerate being in one position for too long due to severe pain." *Id*. She indicated that although they were working on a treatment plan, amputation of the right leg below the knee remained an option. *Id*. Dr. Serels expected these limitations to last between 9 and 11 months. *Id*.

**B. Relevant Hearing Testimony**[3]

During the administrative hearing, the VE testified that Plaintiff's past relevant work is classified as follows: material handler, Dictionary of Occupational Titles (DOT) 929.687-030, semi-skilled, heavy exertional generally and medium as performed; general laborer, DOT 509.687-026, semi-skilled, heavy exertional generally and medium as performed; and, production-machine tender, DOT 699.685-050, semi-skilled, medium exertional generally and light as performed. (Tr. 163-164).

---

[3] Plaintiff has not challenged the ALJ's credibility assessment. Therefore, the court confines its recitation of the evidence received at the hearing to the VE's testimony.

The ALJ posed the following hypothetical question to the VE:

> [I]magine a hypothetical individual with Mr. Wojtaszek's vocational profile.
> Limited to the performance of light work as defined in the regulations, except he
> is limited to no push, pulling of foot controls with the right lower extremity. He
> can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps or
> stairs. He can frequently climb ramps and stairs. He can occasionally balance,
> stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to fumes,
> odors, dust, gases, and poorly ventilated areas. And, he should avoid all exposure
> to hazards such as dangerous machinery, and unprotected heights. This individual
> is further limited to simple, routine tasks, with no strict time demands. No strict
> production quotas. No more than simple work-related instructions and decisions.
> And, no more than minimal, or infrequent changes in the work setting. ….
> Finally, the individual is limited to no direct work-related interaction with the
> public. Occasional interaction with supervisors. And, occasional, and superficial
> interaction with coworkers.

(Tr. 165-166).

The VE testified that such an individual could not perform Plaintiff's past work as a

production-machine tender.[4] (Tr. 166). The VE further indicated that Plaintiff had no

transferable skills from his past semi-skilled jobs. (Tr. 167). However, the VE identified the

following light exertional jobs as examples of positions that such an individual would be able to

perform: marker, DOT 209.587-034, unskilled (300,000 jobs nationally); mail clerk, DOT

209.687-026, unskilled (30,000 jobs nationally); and, photocopy machine operator, DOT

207.685-014, unskilled (65,000 positions nationally). (Tr. 166-167).

In response to questions from Plaintiff's counsel, the VE testified that if the hypothetical

person was limited to no more than four hours per workday, such an individual could perform

the jobs identified in the same numbers. (Tr. 168). Counsel then inquired "[i]f the person could

stand for the four hours, but only lift five pounds frequently, maybe 10 pounds occasionally,

---

[4] The ALJ appears to have implicitly acknowledged that the other past relevant jobs were
eliminated due to the higher exertional demands of those jobs. (Tr. 166). Further, the decision
explicitly found that Plaintiff was unable to perform any past relevant work. (Tr. 23).

would you also reduce it at that point to a sedentary as well?" (Tr. 169). The VE responded that some light jobs would remain, but the mail clerk jobs would be eliminated. (Tr. 169).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

13

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since May 30, 2016, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq.*).

3. The claimant has the following severe impairments: complex regional pain syndrome and neuropathy of the right lower extremity, status post multiple varicose vein surgical procedures; cervical degenerative disc disease; neuromuscular and chronic obstructive lung disease; schizoaffective disorder, bipolar type; and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR § 404.1567(b) and 416.967(b), except he is limited [to] no push/pulling of foot controls with the right lower extremity; he can never climb ladders, ropes or scaffolds; he can frequently climb ramps or stairs; he can occasionally balance, stoop, kneel, crouch and crawl; he should avoid concentrated exposure to fumes, odors, dusts, gases and poorly ventilated areas; and he should avoid all exposure to hazards such as dangerous machinery and unprotected heights. Claimant is further limited to simple, routine tasks with no strict time demands, no strict production quotas, no more than simple work-related instructions and decisions, and no more than minimal or infrequent changes in the work setting; and he is limited to no direct work-related interaction with the public, occasional

interaction with supervisors, and occasional and superficial interaction with coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2016 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-25).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ

failed to apply the correct legal standards or made findings of fact unsupported by substantial

evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

Because the court recommends finding that the third assignment of error warrants a remand,

the court addresses the assignments of error in reverse order.

**1. Opinion of State Agency Psychologist Dr. Delcour**

Plaintiff's third assignment of error asserts that the ALJ assigned "significant weight" to

both State Agency psychological consultative opinions (Tr. 16, 21-22), purported to find

"somewhat greater limitations in social functioning" than the State Agency psychologists (Tr.

16),[5] and yet omitted from the final RFC a limitation assessed by State Agency psychologist Dr.

Delcour. (R. 12, PageID# 1162-1163). Specifically, Plaintiff contends the ALJ did not include *all*

the limitations assessed by State Agency consultant Dr. Delcour, namely the nature and degree of

---

[5] After discussing Dr. Savitscus's opinion and noting it was affirmed upon reconsideration—a
reference to Dr. Delcour's opinion—the ALJ stated: "[t]he undersigned gives significant weight
to the conclusions of the evaluating sources, as they are generally consistent with the objective
and subjective evidence of record, as outlined below. However, given the extent of the
claimant's psychological impairments, and their impact on his behavior, the undersigned finds
**somewhat greater limitations in social functioning**." (Tr. 16 emphasis added).

interaction with supervisors, while ostensibly adopting even more restrictive mental functional limitations than Dr. Delcour assessed. *Id.*

Although an ALJ's decision is not required to discuss every piece of evidence in the record to support the decision, an ALJ must explain why it did not include limitations from a medical source opinion in determining the claimant's RFC. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at \*3 (N.D. Ohio Aug. 26, 2016) (*citing Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)); *Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at \*14 (N.D. Ohio Oct. 22, 2018) (same). This is particularly important, in this case, where a State Agency psychologist assessed a restriction, the ALJ accords the author of that opinion "significant weight" noting it is consistent with the objective and subjective evidence of record, and then purports to adopt even stricter mental limitations. (Tr. 22-23).

Here, the decision addresses the opinions of the State Agency psychological consultants as follows:

> Dr. Savitscus [the first State Agency psychologist] concluded that the claimant is able to perform simple (1-3 step) tasks with no high pace or production requirements (Exhibit 1A). He is able to interact briefly and occasionally in situations that do not require more than superficial contact with coworkers, supervisors, and the general public. He cannot resolve conflicts or persuading others to follow demands. Dr. Savitscus also concluded that the claimant could carry out tasks in settings where duties are relatively static and changes can be explained. This assessment was essentially affirmed upon reconsideration [by Dr. Delcour] ***except for the additional limitation for no interaction with the general public and that supervisors must offer constructive criticism only*** (Exhibit 5A).

> The undersigned also gives significant weight to the conclusions of the evaluating sources, as they are consistent with the objective and subjective evidence of record. However, the mental residual functional capacity has been provided in somewhat more vocationally relevant terminology. For example, due to moderate limitations in his ability to understand, remember, or apply information, the claimant is limited to simple, routine tasks with no more than simple work-related

> instructions and decisions. Because of marked limitations in his ability to interact
> with others, the claimant can have no direct work-related interaction with the
> public, occasional interaction with supervisors, and occasional and superficial
> interaction with coworkers. Due to moderate limitations in his ability to
> concentrate, persist, or maintain pace, the claimant can perform work with no
> strict time demands and no strict production quotas. Finally, because of moderate
> limitations in his ability to adapt or manage himself, the claimant can have no
> more than minimal or infrequent changes in the work setting.

(Tr. 21-22) (emphasis added).

At the fifth and final step of the disability analysis, if a claimant cannot perform the past

relevant work, it must be determined whether the claimant can adjust to other work in light of the

claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). The burden shifts to the Commissioner, at this final step, to prove the existence

of a significant number of jobs in the national economy that a person with the claimant's

limitations could perform. *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir. 1999); *accord*

*White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding that a

claimant can perform a significant number of jobs must be supported by substantial evidence (*i.e.*

that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r*

*of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*,

820 F.2d 777, 779 (6th Cir. 1987)). Testimony from a vocational expert—in response to a

hypothetical question—may constitute such substantial evidence, so long as the hypothetical

question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco*

*v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at

779)).

Despite the ALJ indicating he was adopting a more restrictive mental RFC than either State

Agency psychological consultant, the RFC ultimately adopted by the ALJ did not incorporate the

18

prohibition found by Dr. Delcour that "supervisors must offer constructive criticism only." While the ALJ was not under any obligation adopt this particular restriction assessed by Dr. Delcour, the ALJ's decision is bereft of any discussion explaining whether that particular limitation was credited. Although the ALJ need only incorporate those limitations accepted as credible into the hypothetical questions, *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)), the ALJ's decision acknowledges the constructive-criticism-only limitation, but neither incorporates it nor explains the reasoning for rejecting it. The court, therefore, cannot determine whether the ALJ's hypothetical questioning adequately incorporated all of Plaintiff's limitations. Absent such an explanation, the court cannot find, under the facts of this case, that the ALJ's omission was harmless error. Notably, the VE was never asked what the impact of such a limitation would have on a hypothetical individual's employability. The court is in no position to speculate whether any jobs would remain for an individual who could never be subjected to supervisor criticism that is not constructive.[6] Consequently, the ALJ's failure to explain his rejection of such an opinion was not harmless error.

Accordingly, the ALJ committed error by not explaining why he rejected one of Dr. Delcour's restrictions.

### 2. Remaining Assignments of Error

As the court recommends remanding this matter, it foregoes rendering a recommendation

---

[6] The court's finding that a remand is necessary should not be misconstrued as the court taking any position as to whether the constructive-criticism-only limitation should have been included in the RFC. Rather, on remand, the ALJ should explain whether such a limitation was adopted or rejected. At the Commissioner's discretion, a new hearing may be held with additional VE testimony to clarify the impact of such a limitation.

on any of Plaintiff's remaining assignments of error in the interests of judicial economy. Nevertheless, this court makes a few observations.

In the second assignment of error, Plaintiff asserted that the ALJ failed to provide an adequate rationale for the weight assigned to the functional capacity assessment performed by physical therapist Diehl. (R. 12, PageID# 1161-1162). Specifically, Plaintiff contends the ALJ assigned Ms. Diehl's opinion "considerable weight," yet did not address her opinion that Plaintiff was limited to standing and/or walking 1/3 of the workday in short bursts.[7] *Id*. The decision stated as follows:

> Ms. Diehl concluded that the claimant was capable of sedentary to light work activity. With rare sustained bending, kneeling, and use of foot pedals, and no crawling, squatting, or crouching. The undersigned gives considerable weight to the conclusions of Ms. Diehl, as they are generally supported by the objective signs and findings upon examining the claimant. For example, she noted that the claimant did not use a cane during the examination, but brought one. Upper and lower extremity range of motion was normal, strength was only slightly reduced, forward bending was unlimited, but back bending was moderately limited. The claimant would not try squatting. While these findings are consistent, the undersigned notes that they are *more supportive of a reduced range of light exertion work* with occasional balancing, stooping, kneeling, crouching, and crawling.

(Tr. 22) (emphasis added). First, physical therapist Diehl's opinion was not entitled to any special consideration.[8] Nevertheless, Social Security Ruling ("SSR") 06-03p explains that an

---

[7] A limitation to standing/walking 1/3 of the work-day would effectively preclude light work.

[8] A physical therapist is a "non-acceptable medical source," and an ALJ is "not required to give [a physical therapist's] opinion any particular weight." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 249 (6th Cir. 2015); *accord Knott v. Comm'r of Soc. Sec.*, No. 5:18-CV-1226, 2019 WL 4143885, at *11 (N.D. Ohio June 27, 2019), *report and recommendation adopted*, 2019 WL 4142596 (N.D. Ohio Aug. 30, 2019); *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *4 (E.D. Mich. June 10, 2019), *report and recommendation adopted*, 2019 WL 2647260 (E.D. Mich. June 27, 2019); *see also Perschka v. Comm'r of Soc. Sec.*, 411 Fed. App'x 781, 787 (6th Cir. 2010) (regulations do not include physical therapists in the list of acceptable medical sources). In other words, there is "no requirement" that the ALJ give good reasons for the weight assigned to a physical therapist, because that standard "applies only to 'treating

ALJ should "explain the weight" given to opinions from "other sources," such as physical therapists. SSR 06-03p, 2006 WL 2329939 at *6 (Aug. 9, 2006). On its face, it does not appear that the decision failed to explain why the ALJ believed Ms. Diehl's findings were more consistent with a determination that Plaintiff could perform a limited range of light work, which requires standing up to 2/3 of a workday.

With respect to the Plaintiff's first assignment of error, Plaintiff asserts the ALJ failed to provide "good reasons" for the weight assigned to the opinion of her treating pain management specialist, Dr. Serels. (R. 12, PageID# 1157-1160). Specifically, Plaintiff takes issue with the ALJ's rejection of Dr. Serels's opinion that Plaintiff could stand/walk less than one hour in an eight-hour workday. *Id*. The ALJ plainly rejected a standing/walking limitation finding as follows:

> [Dr. Serels's] extreme limitations are not consistent with the objective evidence of record. For example, physical examinations generally document normal gait, intact reflexes, slightly diminished sensation in the right lower extremity, full strength, and slightly reduced range of motion. Respiratory examinations have also been essentially normal. While there are significant limitations in the claimant's ability to use repetitive foot movements, bending, and reaching, such limitations are not clear here.

(Tr. 22-23). When considering the reasons the ALJ provided for discounting a treating source's opinion, "[a]n example of a good reason is that the treating physician's opinion is 'unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.'" *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)). Plaintiff contends that complex regional pain

---

sources' (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation)." *Roberts v. Comm'r of Soc. Sec.*, No. 1:14-CV-355, 2015 WL 3936177, at *4 (W.D. Mich. June 26, 2015).

syndrome is a unique affliction, and in his reply brief, suggests the ALJ erred by failing to apply

SSR 03-2p, which deals specifically with evaluating cases involving reflex sympathetic

dystrophy syndrome and complex regional pain syndrome. (R. 16, *citing* 2003 SSR LEXIS 2,

*1). Plaintiff, however, did not raise any argument involving SSR 03-2p in his original brief, and

new arguments are inappropriate in a reply.[9]  (R. 12).

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 11, 2021

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied,* **474 U.S. 1111 (1986).**

---

[9]  "[T]he Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived." *Sims v. Piper*, No. 07-14380, 2008 U.S. Dist. LEXIS 123689, 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008) (*citing United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) and *Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir. 2006)). In any event, the Sixth Circuit has found that it is not *per se* error where an ALJ's decision does not explicitly cite SSR 03-2p so long as the decision clearly comports with the five-step sequential evaluation process for the syndromes in question. *Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 438 (6th Cir. 2017). As a remand is recommended, however, the ALJ would have an opportunity to further consider the provisions of SSR 03-2p in assessing Plaintiff's application.